UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| HAROLD C. S.,<br><br>    Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 1:22-cv-00334-REP<br><br>**MEMORANDUM DECISION AND ORDER**<br><br>**(Dkts. 1, 15)** |

Pending is Plaintiff's Complaint (Dkt. 1) and an accompanying Brief (Dkt. 15) appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 9). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

On September 6, 2019, Plaintiff filed an application for social security disability income ("SSDI") with an alleged onset date ("AOD") of April 28, 2013. AR[1] 13, 234. The claim was denied initially on December 4, 2019, and on again on reconsideration on August 5, 2020. AR 108, 129. Plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ"). AR 150. On April 15, 2021, the claim went to a telephonic hearing before ALJ Wynne O'Brien-Persons. AR 34-49. Plaintiff amended his AOD at the hearing to September 6, 2019. AR 38-39.

---

[1] Citations to "AR __" refer to the page cited in the administrative record.

**MEMORANDUM DECISION AND ORDER - 1**

Vocational Expert ("VE") Kent Granat testified at the hearing. AR 46-49. On April 30, 2021, the ALJ issued a decision that was unfavorable to Plaintiff. AR 13-28. Plaintiff appealed this decision to the Appeals Council. AR 226. The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1-6.

Having exhausted his administrative remedies, Plaintiff filed this case. Plaintiff raises a single point of error, alleging that the ALJ erred in accepting step five testimony of the VE unsupported by substantial evidence. Pln.'s Brief at 4 (Dkt. 15).

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

**MEMORANDUM DECISION AND ORDER - 2**

resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical

condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her

**MEMORANDUM DECISION AND ORDER - 4**

impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ Found that Plaintiff had not engaged in SGA since the amended AOD of September 6, 2019. AR 16. The ALJ found that Plaintiff suffered from the following severe impairments: (i) class III obesity, (ii) obstructive sleep apnea, (iii) major depressive disorder with psychotic features, (iv) type I bipolar disorder, (v) panic disorder without agoraphobia, and (vi) generalized anxiety disorder. *Id.* However, the ALJ did not find that Plaintiff had an impairment or combination of impairments that met or equaled the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. AR 18. The ALJ determined that Plaintiff had the RFC to

> perform sedentary work as defined in 20 CFR 416.967(a) with some exceptions. Specifically, the claimant is never able to climb ladders, ropes, or scaffolds, is frequently able to climb ramps and/or stairs, is occasionally able to crawl, is frequently able to stoop, kneel, and crouch, and must avoid all exposure to extreme heat and to hazards. The claimant is limited to simple, routine tasks, is able to tolerate no more than occasional public interaction, is able to tolerate job duties requiring no tandem tasks with coworkers, is able to tolerate no more than

**MEMORANDUM DECISION AND ORDER - 5**

      occasional changes in the work setting, and is reasonably expected to be off task
      3-5 percent of the workday.

AR 20.  The ALJ found that Plaintiff had no past relevant work.  AR 26-27.  However, based on the VE's testimony, the ALJ found that Plaintiff could perform work as a copy examiner, document preparer, or touch-up inspector.  *Id.*  The ALJ further relied on the VE's testimony to find that there are approximately 41,000 copy examiner positions, 43,000 document preparer positions, and 41,000 touch-up inspector positions available in the United States.  AR 27.  Accordingly, the ALJ found Plaintiff not disabled because he could perform work existing in significant numbers in the national economy.  AR 27.

## DISCUSSION

      Plaintiff makes two interrelated arguments as to why the ALJ's step five finding is unsupported by substantial evidence.  First, he argues that the ALJ's finding that he could perform work as a document preparer is inconsistent with the ALJ's RFC determination.  Pln.'s Brief at 5 (Dkt. 15).  Accordingly, Plaintiff contends that the ALJ could only depend on Plaintiff's ability to work as copy examiner or touch-up inspector to find that he could perform work available in significant numbers in the national economy.  *Id.*  Second, as concerns those jobs, Plaintiff argues that the ALJ improperly relied on the VE's job numbers evidence without addressing Plaintiff's submission of competing data from Job Browser Pro.[2]  He contends that his supplemental evidence showed only around 480 copy examiner positions and 1,003 touch-up examiner positions existing in the national economy, far less than the VE's testimony of approximately 82,000 positions for both jobs combined.  *Id.* at 8.  Given the stark difference

---

[2] Job Browser Pro is a software program frequently used by VEs to generate job number estimates.  *See Purdy v. Berryhill*, 887 F.3d 7, 14 (1st Cir. 2018) (explaining that the software is "widely relied upon by vocational experts in estimating the number of relevant jobs in the national economy"); *accord White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022).

**MEMORANDUM DECISION AND ORDER - 6**

between the VE's job numbers estimate and Plaintiff's competing data, he asserts that the ALJ should have, at a minimum, reconciled those differences before finding that those jobs existed in significant numbers. *Id.* at 8-9.

Defendant concedes Plaintiff's first argument. Def.'s Brief at 3 (Dkt. 16). Notwithstanding, Defendant argues that any error was harmless because the ALJ properly found that there were a significant number of national positions as a copy examiner or touch-up inspector and the ALJ had no duty to reconcile Plaintiff's competing job numbers evidence. *Id.* at 4-6. Plaintiff does not challenge that the VE's job number estimates, if accepted, would constitute a significant number of national positions.[3] What remains for the Court, then, is the narrow question of whether Plaintiff's submission of competing job numbers evidence to the Appeals Council triggered the ALJ's duty to reconcile conflicting evidence.

Typically, an ALJ may rely on a VE's testimony as to the number of available jobs in the national economy without any additional foundation. *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). Nevertheless, "VE testimony is not incontestable." *Id.* A claimant may call into question the sufficiency of a VE's estimated job numbers if they raise the issue "in a general sense before the ALJ . . . by inquiring as to the evidentiary basis for a VE's estimated job numbers[.]" *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017). Then, following a hearing before the ALJ, the claimant must either "submit supplemental briefing or interrogatories contrasting the VE's specific job estimates with estimates of the claimant's own" or "raise new evidence casting doubt on a VE's job estimates before the Appeals Council[.]" *Id.* If the claimant's new evidence is "significant and probative" the ALJ must address the inconsistency.

---

[3] Indeed, the Ninth Circuit has held that an ALJ did not err in finding that 25,000 jobs in the national economy constituted a significant number. *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014).

**MEMORANDUM DECISION AND ORDER - 7**

*Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).  What constitutes "significant and probative" new evidence of job number estimates is a case-by-case determination.  *Wischmann v. Kijakazi*, No. 21-35914, 2023 WL 3488107, at *6 (9th Cir. May 17, 2023).

There is no doubt that Plaintiff satisfied the procedural prerequisites for challenging VE job number evidence as he inquired into the basis for the VE's testimony at the hearing and subsequently submitted new evidence challenging that testimony to the Appeals Council.  *See Shaibi*, 883 F.3d 1110. Accordingly, the Court need only consider whether that additional evidence was both significant and probative.

Beginning with the question of whether Plaintiff's additional evidence is probative, the Ninth Circuit recently decided a case almost directly on point with the facts here.  In *Wischmann*, an ALJ denied a claimant's application for benefits after finding the claimant not disabled at step five.  2023 WL 3488107 at *2.  The ALJ relied on VE testimony to conclude that the claimant could perform work available in significant numbers in the national economy.  *Id.*  The VE, in turn, had used Job Browser Pro to inform his job number testimony.  *Id.*  The claimant asked the Appeals Council to review the ALJ's decision and submitted six pages of data, purportedly from Job Browser Pro, which showed significantly less positions in the national economy than the VE had estimated.  *Id.* at *3.  The Appeals Council added this data to the record but denied review.  *Id.*  The claimant then challenged the ALJ's decision in district court, arguing that the ALJ improperly accepted the VE's testimony regarding the number of available jobs in the national economy.  *Id.* at *4.  The district court affirmed the ALJ's decision, and the claimant appealed to the Ninth Circuit.  *Id.*

The Ninth Circuit affirmed the district court's decision.  *Id.* at *7.  The Ninth Circuit reasoned that the claimant provided no information as to how his competing job numbers were

**MEMORANDUM DECISION AND ORDER - 8**

produced, other than noting that they came from Job Browser Pro. *Id.* However, Job Browser Pro is merely software meant to assist VEs in reaching job number estimates and "experience in using the program and interpreting the output would ordinarily be necessary to produce probative results." *Id.* Without information as to the experience of the individual who produced the data, whether they replicated the VE's methodology in using the program, what variables or filters were applied to the data, or what version of the program was used, the reliability – and, therefore, the probative value – of the claimant's competing job number evidence could not be established. *Id.* Accordingly, the Ninth Circuit held that the claimant's additional job numbers evidence was not probative and did not give rise to an inconsistency that the ALJ would be required to reconcile. *Id.* at *6-7.

Like in *Wischmann*, the Plaintiff's additional job number data is not probative. Plaintiff's letter to the Appeals Council does not explain the additional jobs number data other than to say that "Counsel has generated reports from Skilltran's Job Browser Pro" and that Job Browser Pro "draws its data from the Bureau of Labor Statistics." AR 229. There is no explanation of Counsel's experience using Job Browser Pro, what variables or filters he used to produce competing job numbers, or the version of the program used. Indeed, the additional evidence does not, on its face, show that it came from Job Browser Pro at all, although it does list SkillTRAN LLC, the company responsible for Job Browser Pro, as a source of data. AR 231-33. Further, unlike *Wischmann*, where the VE testified that he used Job Browser Pro to generate his job number estimates, the VE here testified that he did "not really use a program" and arrived at his job number estimates through independent analysis and research. AR 48. Consequently, Plaintiff's additional evidence is less probative than the evidence in *Wischmann* because it does not replicate the VE's methodology. *See* 2023 WL 3488107, at *6 (explaining that using a

**MEMORANDUM DECISION AND ORDER - 9**

similar methodology to the VE when generating competing job numbers data could add to the evidence's probative value). Simply put, Plaintiff's submission of an unadorned Job Browser Pro report to the Appeals Council is not probative evidence that would trigger the ALJ's duty to address the discrepancy between that evidence and the VE's testimony.

To be sure, Plaintiff has submitted an additional explanation to this Court that provides some context to his competing job numbers data. Pln.'s Resp. (Dkt. 19). This explanation was not provided to the ALJ or Appeals Council, so it is unclear if it is even properly before this Court on appeal. *See Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017) (explaining that all evidence and issues must be raised before the ALJ and Appeals Council to be preserved for appeal). That said, even if the Court considers Plaintiff's supplemental explanation, it is not responsive to the flaws outlined above. Plaintiff's additional explanation does not shed light on Counsel's expertise in using Job Browser Pro or how he used the program to arrive at his competing job numbers data.[4] And the data, even with additional context, does not call into question the VE's methodology, which did not rely on Job Browser Pro. Accordingly, the Court is not persuaded by Plaintiff's additional argument.

All said, while the ALJ erred in finding that Plaintiff could perform work as a document preparer, that error was harmless because the ALJ also found that Plaintiff could perform work in two other jobs that existed in significant numbers in the national economy. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (explaining that an error is harmless if the court can "confidently conclude that no reasonable ALJ . . . could have reached a different disability

---

[4] The Job Browser Pro reports do contain a brief summary of SkillTRAN LLC's methodology for producing the data on the report, but this is beside the point. The crucial question is how did *Counsel* use Job Browser Pro software to arrive at the reports attached to Plaintiff's letter to the Appeals Council.

**MEMORANDUM DECISION AND ORDER - 10**

determination" even if the error had not occurred).  Plaintiff's submission of an uncontextualized Job Browser Pro report, without more, is not probative evidence that triggered the ALJ's duty to reconcile conflicting evidence.

## ORDER

Based on the foregoing, Plaintiff's Petition for Review (Dkt. 1) is DENIED and the decision of the Commissioner is AFFIRMED.

DATED: June 02, 2023

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 11**